Please call the next case. Case number 513-0198, Ronald B. Scoggins v. Workers' Compensation Commission Good morning. My name is Bob Butler and I represent Mr. Ronald Scoggins. This case comes before the Court of Appeals from the Madison County Circuit Court decision affirming the benefits to Mr. Scoggins. The defense that was raised at the level of the commission and before the arbitrator was the issue of the respondent's intoxication defense. The intoxication defense, at the time of this injury, there was no specific statutory language in Illinois that provided an intoxication defense under the Illinois Workers' Compensation statute. There's no statutory, but the Supreme Court has obviously recognized it can be a defense. That's correct. And they established a very strict rule in terms of when intoxication will be a defense. They said it either has to be sole cause or it has to be so excessive that it constitutes a departure from employment, which has been interpreted by the Supreme Court, as that it must appear as a matter of law that the employee is so drunk and hopeless that he cannot follow his occupation. And our contention in this case is that the evidence simply doesn't meet that standard. The uncontradicted, I guess, medical evidence is that it was estimated that he consumed about 10 cans of beer. Well, that was the estimate of the expert. And there was no testimony from any co-workers or anybody else about what he did that night as far as his job. Well, I think what is more important is that there's no testimony that he didn't perform his work. He was working nights and he was there by himself. And our contention is his job was to move bricks from one area to another area which required him to couple cars and pull them from one area. That was the manufacturing process. And I point out that the burden of proof in this case to show that he failed to perform his employment is on the respondent. Was there evidence put in about how many bricks he moved? Well, he testified that he performed the work for six hours. But there was no actual evidence about how many he would be expected to move, how many he did move? He did talk about in terms of the process of moving them from one spot to another, but not specifically in terms of that evening. And one of the things that happened was he ran it off the track. Well, again, the point is that a brick did fall off and hit the brake and it caused it to derail. But the employer, again, and I have emphasized that the burden is on him to show that he wasn't performing his job duties. And it's a heavy burden that's been placed on him. There's no evidence from the plant manager who came in that that was in any – I mean, he was there. He heard that testimony and he didn't testify that, well, that's an unusual circumstance or that doesn't happen. I mean, a brick falling off is not – you know, moving along a railroad track doesn't seem to be, to me – Well, let's cut to the chase with the doors. He didn't get injured by a brick. He got injured because he was trying to rehang a door by himself, correct? Correct. A 1,000-pound door that – 1,000. Yes. And he knew and was aware there was evidence in the record that usually requires two men to place the door back on his track. The complainant's supervisor was en route to assist him, undisputed. He decides to hang this 1,000-pound door by himself when he's clearly – you'd have to concede – way over the legal limit of intoxication, correct? Well, my response to that would be is whether the evidence is clear that it takes more than one person was disputed. Okay? It's not clear from the evidence that it takes more than one. There is testimony from the plan manager that it usually takes more than one person. It usually takes two people. The other witness that was brought said he had seen two people doing it before, but he didn't describe specifically it took one or two. Well, the claimant – the supervisor was en route. He could have waited. Obviously, the commission concluded. And here's the crux of it. Here's what you have to answer. Here's your hurdle. They concluded the claimant's decision to act alone with respect to a 1,000-pound door was a serious miscalculation of judgment influenced by his excessive consumption of alcohol, which is not disputed, and when coupled with the mishap with the rail car a short time earlier, constituted sufficient proof the claimant was not able to follow his employment. Why is that against the manifest way of the evidence? What part of that is untrue, is not accurate? My first response would be, in getting to that argument, is when you talk about the manifest way of the evidence, when you're talking about him not being able to perform his job, my point is that it's not a manifest way of the evidence. It's supposed to be determined as a matter of law. If we can come to two reasonable conclusions on that, then they have failed to meet that burden that the Supreme Court set out. How can it be as a matter of law whether a person's level of intoxication is sufficient to impair their ability to perform their job? It's not a legal issue. It's a factual question, and necessarily it must be subject to a manifest way standard of review, and the commission's decision has to be granted deference. My question in response to that would be, what does the Supreme Court language say that it must appear as a matter of law? I mean, the facts must be so strong and overwhelming that it must be no reasonable. Well, whether a reasonable person can or cannot do a thing is a factual question. It's not a legal question. And second of all, what did Dr. Long say in his report? He said the level of alcohol that he had would create problems in vision, problems with cognitive function, coordination problems, but most important, problems with judgment. And in this particular case, this guy decided to do this 1,000-pound bore by himself, and there isn't a scintilla of evidence that it was ever done by one person before. It's done by two people. Well, again, the conclusion of the doctor in that is also what I'd say is insufficient, because even he, their expert, couldn't conclude that it was the sole cause. He says it's either the sole cause or very significant. I want to give deference to your argument, and I realize you're here on behalf of a claimant. When would somebody then ever, in your estimation, objectively, and be candid with us, ever be in a condition where you would find that intoxication was a defense? He's at the job. He's walking around. He's not falling down. Anything less than that would mean that he would always recover. I mean, I'm trying to discern from all of these facts, which I think are extreme, actually, against the claimant. When would there be intoxication to which you would say there shouldn't be recovery? Well, I mean, if you look at the cases, a lot of the various cases along, a lot of them have kind of relied on has there been evidence that the gentleman performed his work over a period of time. Our position is that essentially, look, there's a six-and-a-half-hour period of time in which he performed it. If he had just walked into the plant and done it, there would be no evidence that he could perform his work. But the evidence here seems to demonstrate that he did. Well, there's a credibility problem here, too. I mean, it would seem to me the commission didn't believe his testimony that he performed his job, because for one thing, despite the blood alcohol events, he testified that he didn't drink anything. Isn't that right? I do agree that he said that. And I think that probably hurt his credibility, and no doubt the commission discounted his testimony about whether he was doing his job. And I understand that, but my point is that the issue that I have with that is, well, he did testify that he performed his job. The burden, I keep pointing out, the burden is heavy. But if the burden is placed upon the respondent to make proof that he was not performing his job, if he's testifying that he was there and he performed his job for six-and-a-half hours, they had people there capable of testifying that he didn't perform his job, that he did move those bricks, that the mishaps that occurred were unusual or outside the course and scope of what his employment was. There was no testimony to that effect brought. Well, but if his credibility is at issue, as Justice Stewart is saying, they don't believe him. He says that he did his job. Clearly, he's caught in the lie. You're not contesting that, are you? Or are you saying he hadn't been drinking at all? No. Okay. Obviously, you're not going to say that. So clearly, they don't believe him. His testimony, his credibility is removed from the equation. You've got Dr. Long saying he can't do the job in the condition he's in. Do they need any other witnesses at that point? Well, again, if you look at the standards set forth by the court, the standard is it was even the sole cause. Their doctor can't testify to that. I mean, he hedges that. So that doesn't meet the standard for the sole cause. And the other is as a matter of law. Yes, we have testimony, other testimony from other people. Be careful, is it a matter of law? Because I don't know that that's a factual question. How does a court ever conclude as a matter of law somebody can't do a job? Again, my reference in my brief is that in terms of there can be no genuine issues of fact. That's what is normally determined in an issue of summary judgment. I mean, those decisions also oftentimes come down to factual questions. There's always facts included. But a summary judgment is decided as a matter of law. In this particular case, it was decided by a fact finder. And that's entirely different. When a fact finder comes to a conclusion, they don't come to the conclusion as a matter of law generally. They come to the conclusion because they find one set of facts more probable than the other set of facts. When you decide summary judgment, you decide those things as a matter of law because there is no fact question. And so one, the standard of review is to know both. The other one, it's clearly manifest weight. And in this particular case, I would get off that because you're not going to win that point. It is a manifest weight issue. And so now the question is, why is it against the manifest weight? I wanted to call your attention to something else, too, and I'm not being unduly critical about this. We get this too often. On page 14 of your brief, you attempted to equate this man's level of intoxication with the level of intoxication in two other cases where there were warrants. You can't do that. You cannot compare one case to another in an effort on levels of intoxication or nature and extent. We've got a whole series of cases that say you can't do that, and you certainly can't do that in a tort setting. And there's a reason for it. Each one of these people were individuals. How alcohol may affect this guy as compared to how it may have affected the plaintiff in M&M parking or in Cook County are three different issues. And so you really shouldn't do this. And in response to that, my intent there was to show that just the mere fact of his blood alcohol content. Oh, I agree with you, and I don't think the Commission would disagree with you because they didn't find it merely based on his blood alcohol content. They found it based on Long's report and what he said he was doing and the fact, and as Justice Stewart said, the fact they just didn't believe him. And my issue with that is Long's report is based entirely on his blood alcohol content and nothing else. Let's go back to the mechanism of this injury was this 1,000-pound door, correct? Yes. That apparently comes off its rollers periodically? Yes, that was admitted. Okay. Is there any, will the record show that because this is a frequent occurrence, that there's a protocol for replacing the door, or not replacing it but putting it back in order? Well, what I'm stating in my brief and what the evidence showed is there was testimony from Clay Thompson, who was a plant manager, who talked about the maintenance men coming in and they were the ones who performed it. Okay. There was also testimony from a Mr. Dale Hackenthal who also talked about watching people perform this job as well, using jack bars and other methods to replace it. Essentially, this is like a large closet door. Right. And it's already on one roller and he's trying to prop it up and put another one on there. Right. And so it's on one side and it comes off. And so our contention is that, you know, he's looking to continue to perform his job. Well, except maybe not.  And you're not following the protocol and attempting to do something that exposes you to a hazardous condition. That's not part of your job? Well, my response to that is he's there by himself. No. Okay. He's trying to do, he's trying to continue on. He's a guy who's in an effort to continue to perform his employment. Well, that's not his, I guess what I'm trying to get at. It goes back to Justice Hudson's earlier question. Let's get away from intoxication completely. I mean, has he taken himself out of his scope of employment by doing this? I think the evidence is questionable at best in regards to that. My client certainly didn't testify to that and neither did Mr. Hackenthal. He didn't testify. The only one to testify that there was a procedure was Mr. Thompson. And I'd say that's disputed by the other two individuals involved in the case. But the other two witnesses, my witness and another witness that we brought on his behalf to testify about, you know, the manufacture of the board, the door, the size of the door, and the fact, you know, that it came off the hinges from time to time. Yeah, well, see, some of the cases that you're citing, the intoxication cases for lack of a better term, still show the person who has this high blood alcohol level doing what's normal and expected as his position would require. Slipping on a ladder, getting out of a water tank. I mean, things of that nature. Whereas here it seems, I don't know, is the record strong enough to suggest he's not? He's taken himself out. Like a frolic in detour sort of. Again, I would say he's attempting to perform a job. Again, my point is if the guy's lack of judgment is simply negligent as opposed to being the sole cause or him being outside the scope, I don't think it meets the standard of the test. Okay. I see my time is up. You're still able to go through the intersection. That's pretty much all I wanted to say. If you have any additional questions. Okay, thank you. Counsel, you may respond. May I please the court? My name is Jennifer Wagner and I represent the employer, Richards Brick. Did we ask the appropriate questions? I'm sorry? Did we ask the appropriate questions? Yes. As counsel pointed out, the petitioner was alone. He did not call any witnesses to corroborate his version of events. But as the court is aware, the arbitrator is in the unique position of watching the petitioner as he testifies and observing his demeanor, his tone, making a judgment as to his credibility. As the court observed in counsel's argument, the petitioner made certain statements to the effect that he was not drinking alcohol that night. He did not know where any alcohol would have come from that would have been found in his bloodstream. Clearly there was an issue with the petitioner's veracity. It was clear that he was not being forthright. And it was entirely appropriate within the province of the arbitrator and then the commission to give more weight to the opinion of Dr. Long than to the testimony of the petitioner in this case. Giving him this deference, what about his argument? Obviously he was there working for a number of hours. He must have been doing something. So what was it specifically and succinctly, to summarize, takes him out of the scope of his employment? At some point, it's our argument that he became too intoxicated to follow his employment. First, there was the issue with the railway car, which derailed in some fashion. That raises the question as to whether or not he was performing his work adequately prior to the accident, which of course would be the standard to judge whether or not he was able to perform his work, whether or not the intoxication defense would succeed. And then there comes the issue with the door. And again, his judgment, he knows that he has a supervisor en route to the workplace to help him with the car. That's not disputed. Right. And Mr. Funston testified also that if the firemen were alone and the door would come off of the track, the proper procedure would be to call maintenance to assist them. He had that option, and he did not choose that option either. Instead, he chose to replace a 1,000-pound door, and he testified he knew that was so by himself. And that decision is dubious at best. And as the commission found, and I believe it's more probable, it was a judgment that he made based on impaired thinking due to his level of intoxication. Okay, so let's talk about this impaired thinking. Let's take alcohol out of the equation. Let's say everything's going along fine, all the same facts. Okay, the door comes off, and he attempts to put the door back on its tracks, the one side of the door. Would you be contesting this claim? Same injuries? I believe that we would. There could have been more evidence brought out as to the protocol, and that it may have been a disputed claim if intoxication were not a factor. Wait a minute, hold on. As long as he was advancing his employer's operation, even though he violated a rule of protocol or a safety measure, it would be recoverable under the Act. Unless the deviation so takes him out of the scope of his employment, then it's still recoverable. So intoxication is the thing that makes this different than your violation of the protocol. But I have, I think, more of a systemic question. Who bears the burdens of proof, and at what point? He has the burden of proof that he was injured out of and in the course of his employment. Somebody has the burden of proof of showing that he was intoxicated, which was you. Yes. But once you show that he was intoxicated, does the burden shift back to him to establish that he was not so intoxicated, that the intoxication was the sole cause of his injury, or that it took him out of the normal course of his employment? Where do these burdens lie? In the cases that I reviewed, what I determined is that once the employer presents the proof that the petitioner was intoxicated and meets that burden, at that point there would be a counter defense to that defense, and that would be can the petitioner show that he was adequately performing his job, that he was able to adequately perform his job prior to the accident in spite of his level of intoxication. So contrary to your opponent's argument, it was not your burden to prove that he wasn't properly performing his job. It was his burden to prove that he was at the time that he was injured. In order to overcome the evidence against him of the intoxication, then he would have had to show that. How do you define intoxication? I'm sorry? How do you define intoxication? In this case it would have been excessive intoxication, as Dr. Long opined. Well, that's not defining intoxication. Now you're talking about a quantity, a quality of intoxication. What's intoxication? Intoxication would be a consumption of a substance that would impair one's thinking or ability to perform a normal task. That's how I would define it. So we don't have to talk about excessive, do we? Because you've already thrown in impairment in the definition. No, I was connecting that with his level. So you're saying intoxication is impairment? Yes. And is there anything in the way of support or authority in this realm that would support what you've just said about the burden shifting? First, it's only your burden to establish intoxication, and that intoxication simply constitutes impairment, and then it shifts back over to the claimant to establish ability to perform the employment. Offhand, I don't know of a case that expressly puts it that way, but when I've been reading the decisions in Paganellis and Paro, and even the Eminent Parking case that the Petitioner's Council cited to, what the courts are doing is basically comparing the employer's proof regarding intoxication, and then they go back and they look at the petitioner's proof, in spite of the blood alcohol and the lab results, was the petitioner able to perform his employment? And in the Eminent Parking case, that petitioner had a higher blood alcohol concentration, but he had testimony from eyewitnesses who could say, despite that he was performing his job duties adequately before he fell from an elevator shaft and was killed, but he had the proof to counteract all the intoxication proof that was put forward by the employer. Well, the claimant is always going to bear the overall burden of proving his claim, correct, at some point? Yes. But if intoxication is only a defense under certain circumstances, being that he's totally unable to perform his job or it takes him, you know, the definition of Supreme Court, why wouldn't the employer have the burden of proving that that's the case? Why would you only have to show he's intoxicated? Well, we would have the burden of showing that he... We would have the burden of showing... The defense includes those elements, doesn't it? Yes, we would have the burden of showing that he was not able to follow his employment, putting forth the different scientific evidence. And you're saying you did that with the level of intoxication in Wong's report? Yes. You sustained your burden, if there is one, of establishing a certain level of intoxication? Yes. And by the way, was there any dispute or impeachment of the medical testimony? No, there was not. That testimony was unrebutted. If there are no further questions, I'll rest on my break. Thank you, counsel. Thank you. Counsel, I don't believe there are. Okay. Thank you, counsel, both, for your arguments on this matter. It will be taken under advisement, written disposition shall issue. The court will stand in brief recess.